UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIXHAM SOLUTIONS LTD.,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC.,<br><br>Defendant. | Case No. 13-cv-00616-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM NO. 3**<br><br>Re: Dkt. No. 49 |

## I. INTRODUCTION

Plaintiff Brixham Solutions Ltd. ("Brixham") asserts claims of patent infringement against Juniper Networks, Inc. ("Juniper"). Juniper, in turn, has asserted various counterclaims, including a counterclaim that the patents-in-suit are unenforceable due to inequitable conduct. Presently before the Court is Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim No. 3 ("Motion"), which came on for hearing on Friday, January 17, 2014 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

Brixham alleges that it is the assignee and owner of four United States patents, one of which – United States Patent No. 7,940,652 ("the '652 patent") – is the subject of the instant motion.[2] Complaint, ¶¶ 8-11. The '652 patent is entitled Pseudowire Protection Using a Standby

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] The inequitable conduct counterclaim (Counterclaim Three) asserts that Brixham's claims on "at least the '652 patent are barred" on the basis of inequitable conduct. Juniper Networks, Inc.'s First Amended Answer to Brixham Solutions, Ltd.'s Complaint for Patent Infringement ("FAA"), ¶ 66. At oral argument, Juniper stipulated that it is claiming inequitable conduct only as to the '652 patent.

Pseudowire. Complaint, Ex. D. The application that led to the '652 patent was filed on February 14, 2006 and the patent issued on May 10, 2011. *Id*. It lists Ping Pan as sole inventor and Brixham Solutions Ltd. as assignee. *Id*. The Complaint alleges that the technology disclosed in the patents-in-suit was developed at Hammerhead Systems, Inc. ("Hammerhead"), "a highly-regarded Silicon Valley start-up founded in 2002 that liquidated in bankruptcy in 2009." [3] Complaint, ¶ 12.

Juniper's First Amended Answer asserts an inequitable conduct counterclaim ("Third Counterclaim") alleging that Brixham, Hammerhead, "the named inventor, their attorneys, representatives, predecessors in interest, and/or other persons with a duty of candor to the United States Patent and Trademark Office . . . committed inequitable conduct" during the prosecution of the '652 patent by making material misrepresentations of fact or omissions. FAA, ¶ 66. The Third Counterclaim is based on three sets of factual allegations.

The first set of factual allegations falls under a heading entitled, "Applicant's False 37 CFR 1.97(E) Statement Regarding '481 Patent And '891 Application." FAA, ¶¶ 67-77. In this section, Juniper alleges that:

> During prosecution of the '652 patent, the aforementioned entities and individuals with a duty of candor to the PTO withheld certain material prior art, including U.S. Patent Application No. 10/757,528 (which ultimately became U.S. Patent No. 6,985,488 ("the '488 patent")), and U.S. Patent Application No. 10/769,891 (which ultimately became U.S. Patent No. 7,417,950 ("the '950 patent")), until after the PTO had issued a Notice of Allowance for the '652 patent. Moreover, one or more of the aforementioned entities and individuals with a duty of candor to the PTO made false statements to the PTO in connection with the submission of these materials after the Notice of Allowance had issued.

*Id*., ¶ 67.

Specifically, Juniper alleges that Hammerhead, Pan and others with a duty of candor did not disclose these patent applications – which it alleges were "admittedly material" – until four days *after* the PTO issued a Notice of Allowance as to the application that became the '652 patent.

---

[3] According to Brixham, Pan assigned the rights to the '652 patent to his employer, Hammerhead. Motion at 1. Brixham further states in the Motion that Brixham was created "to purchase the rights to a patent portfolio of 25 issued or pending patent applications from Hammerhead Systems, Inc. . . . during a bankruptcy proceeding for a total of $230,000." *Id*. Although these facts are not alleged in the Complaint or contained in a supporting declaration, they appear to be undisputed.

2

*Id.*, ¶¶ 74, 77. Further, Juniper alleges, the Information Disclosure Statement that disclosed the materials, submitted to the Patent and Trademark Office ("PTO") on December 6, 2010 ("the December 6 IDS"), carried the signature of the applicants' attorney, Ted A. Crawford, attesting that "no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement." *Id.*, ¶ 75. This statement was false, Juniper alleges, because the individuals designated in 37 CFR 1.56(c) include "each inventor named in the application," and Ping Pan, the inventor named on the '652 patent, was aware of the applications at issue, having also been named as an inventor on those applications and having signed an oath and power of attorney at the time each was filed. *Id.*, ¶ 76. Thus, Juniper contends, Pan was aware of the patent applications disclosed in the December 6 IDS more than three months before it was filed, rendering the certification on the IDS false. *Id.* According to Juniper, an IDS filed after a Notice of Allowance has issued will only be considered if it is accompanied by a statement certifying that the specified individuals became aware of the prior art disclosed in the IDS within the last three months. *Id.*, ¶ 75. Juniper concludes, "[t]he failure to disclose the '488 patent and the '891 Application until after the PTO had issued a Notice of Allowance, even though the information was admittedly material to the patentability of the subject matter of the '652 patent, along with the submission of a false certification to the PTO regarding the length of time that the applicant had been aware of the '488 patent and the '891 Application, renders the '652 patent unenforceable due to inequitable conduct." *Id.*, ¶ 77.

The second set of allegations offered in support of the Third Counterclaim is entitled, "Failure To Disclose Co-Inventors." *Id.*, ¶¶ 78-87. In this section, Juniper alleges that "entities and individuals with a duty of candor to the PTO failed to disclose co-inventors who made material contributions to the '652 patent." In particular, Juniper alleges that '652 inventor Ping Pan was an "active member" of the Network Working Group and PWE3 Working Group of Internet Engineering Task Force ("IETF") between 2002 and 2007. *Id.*, ¶ 79. According to Juniper, the mission of that group, as stated on its website, is to "make the Internet work better by producing high quality, relevant technical documents that influence the way people design, use

3

and manage the Internet." *Id*., ¶ 80. As part of that working group, Juniper alleges, Pan attended periodic meetings, made presentations and sought input from members of the group. *Id*., ¶ 81. It is further alleged that Pan submitted several "Internet Drafts" entitled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels" to the IETF Network Working Group between July 2002 and May 2005. *Id*., ¶ 83. Juniper alleges that "a number of different authors are listed on these submissions, including George Swallow, Alia Atlas, Der-Hwa Gan, Jean Philippe Vasseur, Markus Jork, and Dave Cooper." *Id*. In addition, Juniper alleges that Pan "submitted several 'Internet Drafts' entitled 'Pseudo Wire Protection' to the IETF Network Working Group between February 2005 and December 2006" and that "[i]n addition to Pan, one of the drafts lists as co-authors M. Bocci and Mustapha Aissaoui of Alcatel, and Florin Balus and Hamid Ould-Brahim of Nortel." *Id*., ¶ 84. According to Juniper, the failure to list any of these individuals as co-inventors on the application that resulted in the '652 patent constitutes inequitable conduct that renders that patent invalid. *Id*., ¶ 87.

The third set of allegations offered in support of the Third Counterclaim is entitled "Applicant's False 37 CFR 1.97(E) Statement Regarding IETF Materials And Failure To Fully And Fairly Disclose Other IETF Materials To The PTO." *Id*., ¶¶ 88-104. These allegations are also based on the December 6 IDS, which disclosed, in addition to the patent materials discussed above, non-patent materials circulated within the IETF Network Working Group authored by inventor Pan and other members. *Id*., ¶ 96. Juniper alleges that these documents were "admittedly material to the patentability of the subject matter of the '652 patent." *Id*. ¶ 97; *see also id., ¶* 99 ("[t]he IETF Prior Art that was withheld from the PTO is material and, had the patent examiner been aware of the withheld prior art, the examiner would not have issued the '652 patent."). Juniper further alleges, on information and belief, that "given Pan's and Hammerhead's involvement in the IETF and status as an author of some of these documents, Mr. Crawford's statement that none of the individuals designated in 37 CFR 1.56(c) were aware of the prior art submitted in the December 6, 2010 IDS was false." *Id*., ¶ 96. According to Juniper, the alleged failure to disclose these materials as well as the intentional misrepresentations constitute inequitable conduct that render the '652 patent unenforceable. *Id*. at ¶¶ 101-102.

4

### III. THE MOTION

In the Motion, Brixham contends Juniper's allegations fall short of stating a claim for inequitable conduct under the standards set forth by the Federal Circuit because Juniper has not alleged specific facts that, if true, establish but-for materiality, that is, that the PTO would not have allowed a claim if it had been aware of the undisclosed reference. Motion at 3-4 (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011)).

As to the allegations based on the failure to disclose to the PTO the patent applications discussed above – hereinafter, the "Pan Prior Art" [4] – prior to the submission of the December 6 IDS (FAA, ¶¶ 67-77), Brixham argues that there are no specific factual allegations showing that the Pan Prior Art is material, and the mere fact that it is listed in an IDS is not sufficient to show that it is material. *Id.* at 4 (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010)). Brixham further asserts that the Pan Prior Art is not material, as a factual matter, because the PTO issued the '652 patent notwithstanding its disclosure in the December 6 IDS. *Id.*

With respect to the co-inventorship allegations (FAA, ¶¶ 78-87), Brixham argues that Juniper's allegations fail because co-inventors must prove by clear and convincing evidence that they made a contribution to the conception of the *claims* of the patent, and here there are no allegations that any of the individuals who purportedly should have been listed as co-inventors made any contributions to the claims of the '652 patent. *Id.* at 5 (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)). Brixham further contends the allegations fail because a claim of inequitable conduct must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and Juniper has not met that standard. Motion at 3 (citing *Reid-Ashman Mfg. v. Swanson Semiconductor Serv., LLC*, 2007 U.S. Dist. LEXIS 37665 at *19 (N.D. Cal. May 10, 2007)); *id.* at 5. In particular, Brixham asserts the allegations fail because the FAA does not identify any particular contribution made by the alleged co-inventors. *Id.* Finally, in a footnote Brixham asserts that Juniper has failed to plead facts showing that the

---

[4] Although the Court adopts the short form used by Juniper to describe the materials described in FAA ¶¶ 67-70, it does not make any finding as to whether these materials in fact qualify as prior art.

alleged failure to list the purported co-inventors was the result of any intent to mislead. *Id*. n. 2.

With respect to the allegations relating to the failure to disclose to the PTO the materials described in FAA ¶¶ 88-104 – hereinafter, the "IETF Prior Art"[5] – Brixham argues that the only allegations that these documents were material are entirely conclusory and therefore do not satisfy the standards discussed above. *Id*. at 5-6. Brixham further contends these allegations are insufficient to establish materiality because, like the patent applications listed in the December 6 IDS, these materials were apparently considered by the PTO and the '652 patent issued nonetheless. *Id*. at 6.

In its Opposition brief, Juniper argues that Brixham has mischaracterized the allegations and theory of the Third Counterclaim, which is not based "solely on the patentee's failure to disclose material prior art references to the . . . PTO" but is also based on "the applicant's submission of a document to the PTO that contained an unmistakably false statement, as well as his repeated misrepresentations regarding inventorship." Opposition at 1. According to Juniper, because its counterclaim involves alleged false statements to the PTO, the but-for materiality test does not apply. *Id*. (citing *Rohm & Hass Co. v. Crystal Chemical Co*., 722 F.2d 1556, 1571 (Fed. Cir. 1983)). Rather, false statements to the PTO are per se material. *Id*. Juniper argues that the Federal Circuit preserved this rule in *Therasense*, noting that "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Id*. (citing *Therasense*, 649 F.3d at 1292).

Juniper contends its "inequitable conduct claim is based on three separate allegations: 1) submission of a false 37 C.F.R. § 1.97(e) statement regarding the Pan Prior Art; (2) submission of a false 37 C.F.R. § 1.97(e) statement regarding the IETF Prior Art, and failure to disclose entirely other IETF Prior Art; and (3) failure to properly disclose co-inventors." *Id*. at 5. As to the first two allegations, Juniper argues that the alleged false statements to the PTO constitute egregious misconduct and therefore are per se material. *Id*. at 6 (citing *Therasense*, 649 F.3d at 1292; *Outside the Box Innovations v. Travel Caddy, Inc*., 695 F.3d 1285 (Fed. Cir. 2012); *Spectrum*

---

[5] Again, while the Court adopts Juniper's short form, it makes no finding as to whether any of these materials are in fact prior art.

1   *Pharmaceuticals v. Sandoz, Inc.*, 2013 WL 5492267, at *3 (D. Nev. Sept. 30, 2012); *Intellect*

2   *Wireless v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013)).  In addition, with respect to the

3   IETF Prior Art, Juniper notes in a footnote that its Preliminary Invalidity Contentions include

4   detailed information charts showing why the withheld references are material to the patentability

5   of the invention disclosed in the '652 patent.  *Id*. at 7 n. 6.  Juniper asks the Court to permit it to

6   amend its complaint to include these contentions if the Court deems the allegations to be

7   insufficient as to that theory.  *Id*.; *see also* Declaration of Rebecca L. Carson in Support of Juniper

8   Networks, Inc.'s Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim No. 3

9   ("Carson Decl."), Ex. D (excerpt of Juniper's Preliminary Invalidity Contentions).

10   With respect to the third allegation, that the '652 patent applicants failed to disclose co-

11   inventors, Juniper argues that but-for materiality is not relevant to this theory because inventorship

12   is highly relevant to patentability and intentional falsehoods or misstatements about inventorship

13   can "'easily render a patent unenforceable due to inequitable conduct.'"  *Id*. at 8 (quoting *TecSec,*

14   *Inc.v. Int'l Bus. Mach. Grp.*, 763 F. Supp. 2d 800, 811 (E.D. Va. 2011)).  Juniper argues that

15   allegations that Pan worked closely with members of the IETF groups and that members

16   contributed to the '652 patent are sufficient to state a claim for inequitable conduct based on

17   failure to disclose material inventorship information from the PTO.  *Id*. at 9 (citing *Gen-Probe v.*

18   *Becton, Dickinson & Co*., 2012 WL 5379062, at *2 (S.D. Cal. Oct. 30, 2012)).[6]

19   Finally, Juniper rejects Brixham's assertion that it has not adequately alleged intent to

20   deceive in connection with the alleged failure to list co-inventors.  *Id*. at 9-10.  Juniper contends

21   intent to deceive may be alleged generally, citing *Oracle Corp. v. DrugLogic, Inc*., 807 F. Supp.

22   2d 885, 896 (N.D. Cal. 2011), and that the allegations in the FAA are sufficient to meet this

23   requirement.  *Id*. at 10.  In particular, Juniper cites allegations in FAA ¶¶ 79 and 82-85 showing

24   that Pan's participation in the IETF working group and his collaboration with members of that

25   group "coincided with Pan's filing and prosecution of the '652 patent."  *Id.*  Juniper further asserts

---

[6] Juniper also asserts in a footnote that to the extent the '652 patent is improper because the applicants did not disclose co-inventors, the affidavits Pan submitted to the PTO about inventorship are also false and therefore support Juniper's inequitable conduct claim.  Opposition at 9. Juniper did not include this theory in its FAA however.

that it has alleged in the FAA that "Pan made presentations and authored 'Internet Drafts' on topics and made presentations at IETF meetings that were directly relevant to the '652 patent, but that he failed to disclose his '652 patent application to the IETF in accordance with IETF rules." *Id*. (citing FAA ¶ 89 and Carson Decl., Ex. C (RFC 3979)). According to Juniper, these allegations support an inference that Pan concealed the '652 patent application from the IETF working group because the claimed invention was the result of their collaborative efforts, thus showing a "pattern of deceit." *Id*. (citing *Intellect Wireless*, 732 F.3d at 1345).[7]

Juniper argues that its Third Counterclaim is sufficiently alleged to survive Brixham's Motion. *Id*. at 11. To the extent the Court finds the allegations to be insufficient, Juniper contends it should be permitted to amend its counterclaim. *Id*.

In its Reply brief, Brixham states that to the extent the Third Counterclaim is based only on the allegedly false statement in the December 6 IDS, the counterclaim should be amended to state as much. Reply at 2. Brixham does not dispute that Juniper has alleged sufficient facts to proceed with the counterclaim on this theory. To the extent Juniper seeks to assert a counterclaim on the basis of the failure to disclose the prior art listed in the December 6 IDS, Brixham asserts, the counterclaim should either be dismissed for failure to allege facts showing the undisclosed prior art was material or amended to add such facts. *Id*. Brixham does not address Juniper's assertion that as to the non-patent prior art listed in the December 6 IDS the specific facts showing materiality are contained in Juniper's invalidity contentions.

Brixham rejects Juniper's argument that the allegations are sufficient as to the alleged failure to disclose co-inventors. *Id*. at 2-3. Brixham argues that while a false declaration of inventorship may be per se material, Juniper does not dispute that an inventor must make a contribution to the *claims* of the patent. *Id*. Having failed to allege that any individual made such a contribution, Brixham asserts, Juniper has failed to adequately allege a claim for inequitable

---

[7] Juniper notes that Brixham does not argue that it has not adequately alleged intent to deceive as to its other theories of inequitable conduct. *Id*. at 9-10. According to Juniper, this is because the FAA includes detailed allegations indicating that Pan was aware of both the patent and non-patent prior art listed in the December 6 IDS long before the IDS was submitted to the PTO, supporting an inference that the certification on the December 6 IDS that Pan became aware of this material only within the previous three months was an intentional misrepresentation. *Id*.

conduct on this theory. *Id.*

At oral argument, Juniper stipulated that its inequitable conduct counterclaim is not based on the theory that the Pan Prior Art is material.

## IV.   ANALYSIS

### A.   Legal Standard

The law of the Federal Circuit governs the question of whether an inequitable conduct claim has been sufficiently alleged. *See Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed.Cir.2007) ("Whether inequitable conduct has been adequately pled is a procedural matter, but since it bears on an issue that 'pertains to or is unique to patent law,' we will apply our own law to the question of whether the pleadings were adequate.")  Further, in *Central Admixture*, the Federal Circuit held that the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, governing allegations of fraud, applies to inequitable conduct claims. *Id.*  Rule 9(b) provides as follows:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  Thus, to state a claim for inequitable conduct, the circumstances of the alleged fraud must be pled with particularity. *Central Admixture*, 482 F.3d at 1356.  Further, while intent to deceive may be averred generally, the Federal Circuit "requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

The elements of inequitable conduct are "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n. 3.  In *Therasense, Inc. v. Becton, Dickinson and Co.*, the Federal Circuit held that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." 649 F.3d 1276, 1291 (Fed. Cir. 2011).  The

1    Federal Circuit explained that "[w]hen an applicant fails to disclose prior art to the PTO, that prior
2    art is but-for material if the PTO would not have allowed a claim had it been aware of the
3    undisclosed prior art." *Id*. The Federal Circuit recognized an exception to this rule, however,
4    "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of
5    an unmistakably false affidavit, [in which case] the misconduct is material." *Id.* (citing *Rohm &*
6    *Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed.Cir.1983)).   This exception
7    "incorporates elements of the early unclean hands cases before the Supreme Court, which dealt
8    with 'deliberately planned and carefully executed scheme[s]' to defraud the PTO and the courts."
9    *Id*. (quoting *Hazel–Atlas Glass Co. v. Hartford-Empire Co*, 322 U.S. 238, 245 (1944)).

### B. Discussion

As a preliminary matter, the Court notes that a number of the issues raised in the Motion are not in dispute. First, Brixham does not dispute that Juniper's allegations are sufficient to state a claim for inequitable conduct on the theory that the certification in the December 6 IDS was false because Pan was aware of the IETF Prior Art and the Pan Prior Art more than three months before the IDS was submitted to the PTO. Thus, to the extent the Motion seeks dismissal of Juniper's counterclaim on that theory, it is DENIED.

Second, Juniper does not dispute that its FAA does not allege specific facts sufficient to establish but-for materiality as to any of the materials listed in the December 6 IDS. Thus, to the extent the FAA purports to base the Third Counterclaim on failure to disclose the IETF Prior Art or the Pan Prior Art, the Motion is GRANTED. Juniper does not seek leave to amend as to the Pan Prior Art and therefore the claim is dismissed with prejudice as to the alleged failure to disclose those materials. On the other hand, it does request leave to amend as to the IETF Prior Art to incorporate into its counterclaim what it says are detailed facts from its invalidity contentions that will show that this prior art satisfies the but-for materiality test. As Brixham has not objected to this request or argued in its briefs that Juniper's invalidity contentions are insufficient, Juniper will be permitted to amend its counterclaim to add these allegations.

Consequently, the only remaining issue before the Court is whether Juniper has adequately pled inequitable conduct based on the alleged failure to disclose co-inventors of the invention of

10

the '652 patent. The Court finds that it has not.

"As a critical requirement for obtaining a patent, inventorship is material." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000). Thus, courts have held that false statements about inventorship are material without applying the but-for test of materiality. *See, e.g., Gen-Probe Inc. v. Becton, Dickinson and Co.*, 2012 WL 5379062, at *2 (S.D. Cal., Oct. 30, 2012). In *Gen-Probe*, the court explained that such an approach is appropriate because "[u]ltimately, non-disclosure of a reference may have no effect on an examiner's decision whether to allow a claim, but '[e]xaminers are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship.'" 2012 WL 5379062, at *2 (S.D. Cal., Oct. 30, 2012) (citing *PerSeptive Biosystems*, 225 F.3d at 1321 (Fed. Cir. 2000)).

While inventorship is material per se, however, an individual who simply shares ideas with an inventor on the relevant subject matter is not necessarily a co-inventor. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). In *Ethicon*, the Federal Circuit held that a co-inventor "must generally contribute to the conception of the invention." *Id*. (citing *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed.Cir.1994)). The court explained:

> "Conception is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Hybritech, Inc. v. Monoclonal Antibodies, Inc*., 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed.Cir.1986) (quoting 1 Robinson on Patents 532 (1890)). An idea is sufficiently "definite and permanent" when "only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome*, 40 F.3d at 1228.

*Id*. A co-inventor need not make a contribution to every claim but must contribute to at least one claim. *Id*. The court noted that "one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Id*. (citations omitted); *see also Shatterproof Glass Corp. v. Libbey-Owens Ford Co*., 758 F.2d 613, 624 (Fed. Cir. 1985) ("An inventor may use the services, ideas and aid of others in the process of perfecting his invention without losing his right to a patent.") (quotation and citation omitted). "Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of

11

1   the claims at issue." *Ethicon*, 135 F.3d at 1460.

2   Juniper has not alleged specific facts that would support an inference that any particular
3   individual in the IETF working group with whom Pan collaborated jointly conceived the invention
4   of any specific claim of the '652 patent.  Merely alleging generally that an inventor shared ideas
5   with other individuals on the same subject matter, as is alleged in the FAA, does not meet the
6   particularity requirement of Rule 9(b) or establish co-inventorship under the guidelines set forth
7   by the Federal Circuit.  In the absence of allegations identifying the specific individual or
8   individuals who allegedly co-invented the claimed invention and setting forth specific facts
9   showing how each of these individuals contributed to the conception of a particular claim or
10  claims, Juniper's inequitable conduct allegation based on this theory is insufficient as a matter of
11  law.

## V.    CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part as follows.  The Motion is GRANTED to the extent the Court finds that Juniper has not adequately alleged inequitable conduct based on the theories that: 1) the '652 patent applicants failed to disclose to the PTO the Pan Prior Art; 2) the '652 patent applicants failed to disclose to the PTO the IETF Prior Art;  and 3)  the '652 patent applicants failed to disclose co-inventors of the invention.  The Motion is DENIED as to Juniper's inequitable conduct counterclaim to the extent it is based on the alleged false statements in the December 6 IDS.  Juniper shall have leave to amend the Third Counterclaim as to: 1) the materiality of the IETF Prior Art; and 2) the failure to list all co-inventors of the invention disclosed in the '652 patent.   Brixham may also amend the Third Counterclaim to include the theory discussed in footnote 6 of this Order.   An amended

answer and counterclaim shall be filed within 45 days of the date of this order.

**IT IS SO ORDERED.**

Dated:  January 22, 2014

                                                                          _____  
                                                                          JOSEPH C. SPERO  
                                                                          United States Magistrate Judge